IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

EDGAR R. TORO,

    Plaintiff,

    v.                                     CIVIL NO.: 12-1962 (MEL)

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

**I.    PROCEDURAL AND FACTUAL BACKGROUND**

Edgar R. Toro ("plaintiff" or "claimant") was born on January 18, 1966, has a high school education, and is able to communicate in English. (Tr. 24.) On January 7, 2010, plaintiff filed an application for Social Security disability insurance benefits, alleging disability beginning on December 1, 2009. (Tr. 16.) The end of the insurance period was December 31, 2012. (Tr. 20.) Plaintiff had prior work experience in four positions: 1) as an estate manager; 2) in shipping and receiving; 3) as a truck driver; 4) and as a warehouse specialist, but did not engage in substantial gainful activity during the disability insurance period. (Tr. 18; 35-36.) Claimant's application was denied initially and upon reconsideration. (Tr. 16.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. He waived his right to appear and testify at the hearing held on February 9, 2011, but he was represented by counsel at the hearing and a vocational expert ("VE") testified at the hearing by teleconference. (Tr. 16.) The ALJ rendered a decision on April 8, 2011, finding at step five that plaintiff was not disabled prior to September 30, 2010, but became disabled on that date and continued to be disabled through the date of the ALJ's decision. (Tr. 26.) The Appeals Council denied plaintiff's request for review on

September 27, 2012. (Tr. 1.) Therefore, the ALJ's opinion became the final decision of the Commissioner of Social Security (the "Commissioner" or "defendant"). Id.

On November 27, 2012, plaintiff filed a complaint seeking review of the ALJ's decision pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706, alleging that defendant's finding that plaintiff was not disabled prior to September 30, 2010 was not based on substantial evidence. ECF No. 1, ¶ 3, 6. Defendant filed an answer to the complaint and a certified transcript of the administrative record. ECF Nos. 6; 7. Plaintiff filed a supporting memorandum of law. ECF No. 17. On October 1, 2013, the Commissioner requested leave for an extension of time until November 1, 2013 to file a response and opposition, and on October 25, 2013 requested a second leave for an extension of time until November 22, 2013 to file said response. ECF Nos. 18; 19. Although both requests were granted, the Commissioner has not filed a response in opposition as of the date of this order.

## II. STANDARD OF REVIEW

The Social Security Act (the "Act") provides that "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence exists "is a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion." Irlanda-Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's decision must be upheld if the court determines that substantial evidence supports the ALJ's findings, even if a different conclusion would have been reached by reviewing the evidence *de novo*. Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st. Cir. 1981). The Commissioner's fact findings not conclusive, however, "when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

An individual is deemed to be disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). If the ALJ concludes that the claimant's impairment or impairments do prevent him from performing her past relevant work, the analysis then proceeds to step five. At this final step, the ALJ evaluates whether the claimant's residual functional capacity ("RFC"),[1] combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the claimant can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g). Under steps one through four, the plaintiff has the burden to prove that he cannot return to his former job because of his impairment or combination of impairments. Ortiz v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989) (per curiam). Once he has carried that burden, the Commissioner then has the burden under step five "to prove the existence of other jobs in the national economy that the plaintiff can perform." Id.

### III.  RELEVANT MEDICAL EVIDENCE[2]

On May 5, 2010, claimant was treated for major depressive disorder at the Department of Veteran's Affairs health facilities (the "VA") and reported feeling depressed for the last 6-7 months due to stressors such as chronic pain, unemployment, and going through a divorce. (Tr. 597.) He expressed suicidal ideation, drinking 6-12 beers a day. Id. The VA placed claimant on the high risk for suicide list. (Tr. 591).

---

[1] An individual's RFC is the most that he or she can do in a work setting despite the limitations imposed by her mental and physical impairments. 20 C.F.R. § 404.1545(a)(1).
[2] Plaintiff's social security appeal is confined to arguments regarding his alleged mental health impairments. Therefore, this section does not contain a summary of the evidence in the record regarding his alleged physical impairments.

3

Claimant was admitted to Central Florida Behavioral Hospital from May 5, 2010 through May 13, 2010 for psychiatric evaluation and stabilization, following the period of suicidal ideation. (Tr. 425; 432). His discharge summary reveals that an admitting diagnosis was "[b]ipolar disorder without psychosis, severe" which was changed to "[m]ajor depression, initial, severe without psychosis," as a discharge diagnosis. (Tr. 426-27.) The discharge summary also reveals that in individual therapy claimant denied ever having suicidal ideation. (Tr. 426.) It states that he demonstrated a depressed mood and affect during his stay, but began to appear less depressed and reported that his mood was more stable. (Tr. 427.) Individual therapy and medication management were recommended at discharge. (Tr. 428.)

Claimant was seen at the VA following his discharge through June 29, 2010, and assessed at a low risk for suicide on numerous occasions. (Tr. 562; 572; 574; 578.) On May 26, 2010, a social worker at the VA reported he appeared alert and oriented, had no apparent psychosis, appeared mildly depressed with congruent affect, and that his thought processes seemed logical, linear, and goal-directed. (Tr. 752.) On June 4, 2010, the last date which the record reflects that claimant was seen at the VA for mental health matters, a mental health nurse at the VA reported that patient had not drank alcohol since May 4, 2010, that he continued dealing with multiple stressors, such as chronic pain, unemployment, and marital discord, which affected his mood. (Tr. 567-69.) She indicated that his thought process was "without psychotic features." (Tr. 569.) The final mental health note from the VA, dated June 29, 2010, reflects that the VA contacted him on that date, assessed him at a low suicide risk, and states that claimant replied he would call back later that day. (Tr. 562.)

On August 19, 2010, state agency medical consultant Theodore Weber, Psy.D. ("Dr. Weber") completed a Mental Residual Functional Capacity Assessment ("MRFC") form

4

regarding plaintiff's mental health condition. (Tr. 641-42.) In Section I, the "Summary Conclusions" portion of the MRFC form, Dr. Weber checked boxes to indicate that plaintiff was "moderately limited" in his ability to:

> 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform and a consistent pace without an unreasonable number and length of rest periods; 5) accept instructions and respond appropriately to criticisms from supervisors; and 6) set realistic goals or make plans independently of others. (Tr. 642).

In Section III, the "Functional Capacity Assessment" portion of the MRFC form, Dr. Weber elaborated that the functional data showed that plaintiff:

> Would be able to understand and remember simple instructions, but would have difficulties with more detailed instructions . . . ; [w]ould [be] able to complete simple tasks/work procedures and be able to make work decisions but would have difficulties with maintaining attention and concentration for extended periods and would have difficulties carrying out detailed instructions . . . ; [w]ould be able to cooperate and be socially appropriate but would have difficulties accepting criticism from supervisors . . . ; [and] [w]ould be able to react/adapt appropriately to the work environment but would have some difficulties setting realistic goals. Id.

On September 30, 2010, claimant was admitted to the First Hospital Panamericano outpatient program. (Tr. 673.) He was discharged from First Hospital Panamericano on January 19, 2011.[3] Id.

---

[3] The record does not contain English language versions of the progress notes from claimant's stay at First Hospital Panamericano. However, the content of said notes would not be relevant to this opinion, as claimant only challenges the ALJ's decision for the period prior to said date, and does not make any arguments regarding the ALJ's treatment of the evidence from his stay at First Hospital Panamericano. The ALJ concluded that claimant was disabled from the date of his admission onward, stating "[a] longitudinal analysis of the medical evidence commencing on September 30, 2010, when he was first admitted to the First Hospital Panamericano outpatient program, the claimant's depressive disorder decompensated into a severe major depressive disorder with psychotic features. . . . At that time the claimant's self-destructive thoughts resurfaced, requiring constant monitoring . . . ." (Tr. 20.)

IV.     ANALYSIS

In the case of caption, plaintiff challenges the ALJ's decision that he was not disabled prior to September 30, 2010. Plaintiff's primary objection is that the ALJ's determination of his RFC and the subsequent hypothetical presented to the VE did not accurately reflect all of plaintiff's functional limitations.  See ECF No. 17 at 10-14.  Specifically, plaintiff argues that the ALJ's RFC determination failed to account for all of the limitations that Dr. Weber identified in Section I of the MRFC assessment, including his ability: to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform and a consistent pace without an unreasonable number and length of rest periods. See id. at 4. Claimant argues that the ALJ erred in failing to proffer an explanation as to why he chose to disregard those limitations.  See id. at 13-14.

The ALJ was under no burden to include each of the six individual summary conclusions found in Section I of Dr. Weber's MRFC Assessment in his hypothetical question to the VE.[4] As the Social Security Administration has explained in its Programs Operations Manual: "Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment" of the state agency psychologist who completes it.  POMS DI 25010.060 (emphasis omitted); see also Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 636-37 (3d Cir. 2010) (affirming district court's decision "[b]ecause [appellant] cannot rely on the worksheet component of the Mental Residual Functional Capacity Assessment to contend that the hypothetical question was deficient

---

[4] Plaintiff relies heavily on decision reached in Miranda-Bonilla v. Astrue, in which the court found that the questions posed by the ALJ did not clearly or accurately reflect the limitations found by the state agency physician. Miranda-Bonilla v. Astrue, 11-1861 (JAF), 2013 WL 789216 (D.P.R. Mar. 4, 2013). The opinion in Miranda-Bonilla v. Astrue, however, does not indicate whether the state agency physician's findings came from a MRFC Assessment. Even assuming they did, however, this does not negate the fact that the ALJ in the case of caption was under no obligation to specifically refer to each of the limitations identified as summary conclusions in Section I of the MRFC Assessment in his RFC determination and hypothetical posed to the VE.

6

….") accord Israel v. Astrue, 494 F. App'x 794, 797 (9th Cir. 2012). "[A]s provided on the face of the form itself, the criteria found in Section I of the form should be used to provide a more detailed assessment of RFC in Section III of the form." Pippen v. Astrue, No. 1:09cv308, 2010 WL 3656002, at *6 (W.D.N.C. Aug 24, 2010), adopted by 2010 WL 3655998 (W.D.N.C. Sept. 15, 2010).

The individual limitations regarding plaintiff's ability to function in a work environment listed in Section I of the MRFC Assessment were subsumed within Dr. Weber's narrative assessment of in Section III. The MRFC form itself instructs the medical professional completing it to "Record the elaborations on the preceding capacities in this section. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. Explain your summary conclusions in narrative form." (Tr. 380.) (emphasis in original). Therefore, the ALJ did not need to specifically reiterate the limitations that derive from the boxes Dr. Weber checked in Section I in his hypothetical to the VE.

Plaintiff does not argue that the ALJ failed properly consider the description of his functional limitations from Section III of Dr. Weber's assessment. It is clear that the ALJ based his RFC determination in large part on Dr. Weber's analysis of plaintiff's limitations from that section. (Tr. 21). The ALJ stated that he "concur[red] with Dr. Weber's analysis of the medical evidence" and found that claimant had the RFC "to perform sedentary work as defined in 20 CFR § 404.1567(a) except following and executing complex instructions. The claimant was able to follow and execute simple and repetitive instructions and therefore able to perform unskilled, simple, repetitive work activity not involving contact with the public and/or frequent contact with coworkers and supervisors." (Tr. 21-22.) In the hypothetical question posed to the VE, the ALJ asked the VE to consider a person:

>with the same work experience, the same age, the same academic vocational profile as that of the claimant. In addition, consider a person whose maximum exertional capacity is sedentary, whose maximum mental capability is engaging in simple repetitive tasks, who can have no contact with the public and who can have a maximum of occasional conduct with supervisors and co-workers. (Tr. 37.)

The RFC and hypothetical incorporate most of Dr. Weber's findings from Section III of the MRFC form. The limitations from Section III with regard to his ability to maintain attention and concentration for extended periods and to set realistic goals, however, were not addressed in the RFC determination or in the hypothetical. The ALJ's hypothetical is also silent with regard to claimant's ability to maintain attention and concentration for extended periods and to set realistic goals.

Assuming for argument's sake that the ALJ committed an error in failing to mention a limitation with respect to plaintiff's ability to maintain attention and concentration or to set realistic goals in his hypothetical to the VE, the record supports the notion that the omission would not have impacted the VE's conclusion, or the ALJ's ultimate determination. After the VE testified that a person with the limitations described in the ALJ's hypothetical could perform the positions of file assembler or stone setter, which exist in significant numbers in the national economy, counsel for plaintiff asked the VE whether a hypothetical individual could perform the jobs the VE identified with additional, moderate limitations in the ability: 1) to maintain attention and concentration for extended periods of time; 2) to complete a normal workday and workweek without interruptions from his psychologically-based symptoms; and 3) to set realistic goals or make plans independently of others. (Tr. 40-41.) Based on the attorney's question, the VE responded that that hypothetical individual could perform the jobs of final assembler and stone setter. (Tr. 41.) The ALJ determined that prior to September 30, 2010 claimant was not

8

disabled, relying on the VE's testimony that an individual with claimant's age, education, work experience, and RFC could perform the jobs of final assembler and stone setter.

"The First Circuit has applied a 'harmless error' rule in Social Security benefit cases." Ward v. Apfel, No. 98-168-B, 1999 WL 1995199, at *3 (D.Me. June 2, 1999) (citing Pérez Torres v. Sec'y of Health and Human Servs., 890 F.3d 1251, 1255 (1st Cir. 1989)) ("Accordingly, if the likely outcome on remand in this case is clear and the same as that reached in the decision under review, making the administrative law judge's admitted error essentially harmless, the court may uphold the denial of the plaintiff's claim."); see also Laffely v. Barnhart, No. 04-273-P-C, 2005 WL 1923515, *7 (D.Me. Aug. 9, 2005) (finding plaintiff's claim was "stymied by the harmless-error rule" where the ALJ failed to adopt a handling limitation in his RFC determination, but "relied on vocational testimony . . . which did incorporate that restriction"). The evidence in the record clearly and specifically supports a conclusion that difficulties in maintaining attention and concentration for extended periods and difficulties setting realistic goals would not impact the ability to maintain employment as a final assembler or stone setter. Thus, based on the harmless-error rule, remand is not warranted for the ALJ's failure to include such limitation in the hypothetical question he posed to the VE, as the record supports the ALJ's finding of not disabled. Cf. Smell v. Astrue, No. 4:11-CV-01116, 2012 WL 5864497, at *8 (M.D. Pa. Nov. 19, 2012) (finding remand appropriate where there was "no evidence in the record from a vocational expert that a moderate to marked limitation in those areas would not impact Smell's ability to maintain employment as a bench type assembler, packager or inspector,' and the court could "only speculate as to what the erosion would have been if a marked or moderate limitation in concentration, persistence or pace would have been included in the hypothetical question").

Lastly, claimant states "it was not mentioned in the hypothetical, the limited capacity for handling stress, nor the laboral [*sic*] place disruption that would be caused by the outbursts of a bipolar disorder." ECF No. 16, at 16. Claimant does not specify the origin of the limitation regarding claimant's ability to manage stress in the record. The ALJ did not conclude that claimant was limited in his stress-management abilities, and there is no indication that he ignored substantial evidence in his decision not to make such a finding. Therefore, the ALJ did not err in failing to mention a limited capacity for managing stress in the hypothetical to the VE. With regard to claimant's initial diagnosis of bipolar disorder, the mental health evidence in the record from prior to September 30, 2010 does not reflect a history of disruptive outbursts. The ALJ did consider the bipolar diagnosis made upon claimant's initial admission to Central Florida Hospital, but concluded that:

> [t]hough the mental health professionals from Florida diagnosed a bipolar disorder, the longitudinal analysis of the medical evidence on the whole record supports the diagnostic impression of major depressive disorder reported by the psychiatrists and psychologists from the [VA]. Nevertheless, irrespective of the diagnosis, the mental examinations revealed that the claimant was calm, logical, coherent, relevant, and well oriented in the three spheres. The affect was mostly appropriate. The mental examinations failed to disclose significant abnormalities of thought process and content, homicidal or psychotic ideas. (Tr. 20.)

The ALJ's conclusion is supported by substantial evidence in the record, and the ALJ did not err in his decision not to include an instruction that claimant's hypothetical workplace would be disrupted by outbursts associated with bipolar disorder.

V.   CONCLUSION

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.[5]

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 10th day of March, 2014.

s/Marcos E. López<br>U.S. Magistrate Judge

---

[5] Twice the Commissioner requested an extension of the deadline to file a response in opposition to plaintiff's memorandum. Despite the fact that the court granted both requests, the Commissioner never filed a response. The court expects extension requests to be made in good faith and for justifiable reasons. Unfortunately, in this case the Commissioner's extension requests simply delayed the proceedings. Should this situation arise again, the court will consider a variety of alternatives, including but not limited to denying future extension requests and construing defendant's silence as a concession that the case ought to be remanded.